141766 LG Display Co., Ltd. Thank you, Your Honor, and may it please the Court. Defendants obtained a U.S. patent for an intellectual property stolen from LG and went on to collect license fees. After their theft was discovered, they engaged in several rounds of appearing to reach a settlement and appearing to be willing to execute that settlement but backing out. Defendants finally were forced to turn over that IP and disclaim ownership, but they retained their gains from the wrongful conduct, and that's the question that remains in the case. There are two issues. Whether LG's claims against the company and Mr. Hirota are barred by the statute of limitations and whether Mr. Tanaka, who stole the IP when he was an LG employee and then masterminded the patent applications using essentially a straw man, is subject to personal jurisdiction so he can answer for that wrongful conduct. Why could you have not proceeded while the Korean litigation was pending? Well, we could have proceeded, Your Honor. I think the question is I think the district court assumed, and I think the facts make it appropriate to assume that there was inequitable conduct here in terms of the back and forth over whether the settlement would be executed. And so the question then is when would a reasonable person institute a claim again? I don't understand. When you say when the settlement would be executed, you don't mean executed in terms of signed and memorialized. Consummated, I'm sorry. You mean executed in terms of why aren't you giving us the darn patents that you promised to give us, right? Exactly, Your Honor. So the problem was one thing you knew from the very outset was Mr. Hirota said he wasn't giving you the $5 million from Hitachi. In fact, the fact he said is I'll accept your settlement terms, but I'm not giving you the $5 million. That's my interpretation. It's Japanese. But no, he was very clear, unequivocally clear in that fact, and there was some back and forth that went on for almost a year between you all where you didn't seem particularly excited about giving away that $5 million, understandably. But then when you came back and said to Mr. Hirota, we received your signed settlement agreement on April 3rd. We accept your proposal for the existing contract between you and Hitachi before the settlement agreement. So his proposal was you're not giving the $5 million. You came along less than a year later and said in 2009, okay, we accept the fact that as part of the settlement you're not giving us the $5 million. So why did anything that he did with regard to not transferring the patents in a timely fashion lull you into believing he was in fact going to give you the $5 million so you didn't pursue it? Well, Your Honor, I think the way we interpret the settlement agreement at least, and certainly my friends haven't said anything contrary, is the settlement agreement just doesn't address, there wasn't a meeting of the minds on the $5 million one way or the other. You're correct. We received your signed settlement agreement on April 3rd. We accept your proposal for the existing contract between you and Hitachi before the settlement agreement. His proposal was unambiguous. Do I need to read that to you? His proposal was I'm not giving you the $5 million. The Hitachi contract is exempt from the settlement. What is ambiguous about that? Well, Your Honor, I think that the course of dealing back and forth about the $5 million that led to that ultimate acceptance in September of the April offer did say that it focused on the offer and the transfer. And certainly defendants have never said in this litigation that their view is that the agreement precludes the claims because they're still taking the position that there's no agreement. And they haven't gotten any… Is it your view that the settlement agreement itself entitles you to the $5 million? No, our view is the settlement agreement doesn't address the question one way or the other. The meeting of the minds was for the transfer of the patents, and that was all that was agreed to, and everything else was not agreed to. If that's the case, then why would transfer of the patents have lulled you into believing that he was going to hand you over the $5 million, and why would that create an excuse for you waiting years and years and years to pursue the claim for the $5 million? I don't think it lulled us into believing things one way or the other. I think LG's view was, and the reason it was willing to accept the agreement ultimately that left the question of the $5 million unresolved was, if indeed this settlement was going to be quickly consummated, worrying about the $5 million was beside the point. What LG wanted was to get its stolen property back and to get the patents. And so what happened was LG believed that it had consummated a deal that didn't resolve the $5 million. It was willing to put the $5 million aside at that point because it was going to immediately get the patents. It didn't. What does the fact that it didn't immediately get the patent have to do with creating an impression or an ability of them not to pursue the $5 million for so many years? Well, because part of LG's thinking about the $5 million claim was it was willing to forego that claim. That all sounds like strategic thinking on your part, not walling on their part. It sounds like intentional choices. I mean in your own words you're saying they decided to forego it. Well, if you decided to forego it, that's not walling. That's your intentional choice. Why couldn't at the very latest it seems like you knew when you filed claims in Korea in 2006 that they weren't complying with the settlement agreement the way you thought they were and that you at least filed some tourist claims there. Why couldn't you have filed suit in the district court in 2006? Well, we certainly could have, Your Honor, and I think the question as we view the case is what's the reasonable period to what would equity allow in terms of a period of time to not have the statute of limitations run? And our submission is that Well, don't you know, I mean isn't it typical that it accrues when you know there's some kind of dispute? Well, I think that You knew in 2006 that there was a dispute about the terms of the settlement agreement and you also went forward and filed some court claims in Korea. So you must have had some idea in 2006 that you wanted to pursue those kinds of claims. We did, Your Honor, and our submission is that the question here is equity. It's obviously a flexible remedy in terms of how long the period can last and when the statute is suspended and the running of the statute is suspended, and our submission is that really what happened here was that the inequitable conduct forced us to go to Korea and embark on that adventure to get a seven-year process of getting the contract upheld and that that is the appropriate period of time. There's obviously in the case law, there's nothing one way or another. Most of the cases deal with whether or not there was something done at all. Our submission is that as a result of the inequitable conduct, defendants should not be able to force us to basically litigate the same issue at the same time in two different places that fairness and reasonableness would allow us to finish in Korea and then come to the United States. But your point was that in Korea you were trying to get the transfer of the patent. It's not the same issue at the same time. What you're trying to seek here and asking the loaning doctrine to extend a statute of limitation for is the five million. But as you, such as Judge Hughes, you put that aside. Well, they're not exactly the same thing, but they're related things. Certainly, it would be highly relevant to the U.S. misappropriation claim that the patents were transferred for no consideration and having that happen would have given us quite a leg up in asserting our misappropriation claim. Maybe we should turn to the personal jurisdiction argument. The district court's finding of no personal jurisdiction was based on an affidavit by Mr. Tanaka that contained at least three material false statements regarding his role in these proceedings. Some of this is confidential, but it's discussed in detail on page 30 of our opening brief and pages 25 to 27 of our reply brief. Based on public information, I can say that he sold the technology and used HIROTA as a front to apply for the patents. He denied having any role in giving the technology. He drafted the U.S. patent application, and he benefited financially. So that affidavit's to the contrary. There's no doubt that it appears that he made some misrepresentation to the district court in the course of their assessment of personal jurisdiction, but does that mean it warrants reversal in light of the fact that 293 only allows suit against the patentee and he's not the patentee. He never has been. In fact, it took great efforts to try to hide his involvement, as you eloquently pointed out in many of your pleadings below. So he isn't the patentee. So if 293 doesn't allow it to reach him, what does it matter? I mean, of course it matters. If you lie to a tribunal, they'll do it to me. But what does it matter in terms of the outcome in this case? Well, I think obviously, just to back up, obviously the district court's decision was not based on 293 at all. It was based on the misapprehension that he had raised the statute of limitations defense, which he hadn't. And so the district court's reason for not looking at our motion of reconsideration doesn't work based on the fact that he did not raise the statute of limitations. So we're getting – There's one sentence in that footnote, right, where the district court – The district court says if I got to it, I would be skeptical because he's not the patentee under 293. And I think our submission under 293 is certainly if there were two corporations involved here and they were alter egos, if the corporate veil could be pierced, I think there would be a very strong argument that 293 would reach the non-named patentee corporation that is in control and that was essentially under the law the same entity as the corporation that was the named patentee. I think there would be a strong argument of that and I think there would be a great reason to want to interpret 293 to do that as other statutes that confer long-arm jurisdiction are generally interpreted in terms of merging entities where there is an alter ego relationship because otherwise you obviously, the really bad guys, are not subject to jurisdiction. So I think the question here and the argument we've made is that similar kind of argument, that alter ego, they're really one and the same, should apply when an individual uses a front man essentially as the named patentee but that person is literally the patentee in name only but the entire control of the process and everything else is being done by someone else. If the rule would be when there's a corporation that's an alter ego, we would merge them. We think the law allows for a similar rule when people use individuals rather than a shell corporation as their front man. But while the district court may be annoyed by Mr. Tanaka's representation, the ones we won't talk about because some of them are confidential and I can't keep in my head straight what is and isn't so I'll just avoid all of them, there's also the driving force of this case goes away entirely if Mr. Tanaka is allowed to amend his pleading and add the section of limitations to this because there's nothing that even vaguely is alleged to distinguish his set of circumstances from the others. Assuming you don't prevail on the section of limitations to this, why would the district courts go through this exercise? Do you really think it's necessary to send it back to her him? Do you think it's really necessary to send it back to them and go through the exercise of deciding whether to allow Mr. Tanaka to amend? I think so, Your Honor, because I think first of all he has asked for leave to amend and I think a highly relevant question on whether the district judge would grant leave to amend is the misrepresentation in the very affidavit that led to the personal jurisdiction decision and certainly the district court has wide discretion with respect to sanctions for misconduct and here we have, with respect to a pleading before the district court, we think an extremely strong case for material false and we think probably intentionally false statements that were the basis for the ruling. That doesn't mean that he's going to say that he can't amend it for purposes of statute of limitations where he's already really decided the statute of limitations questions with respect to the other case. Your Honor, respectfully, I think the district court has wide discretion in terms of picking a sanction. I mean, at the outset, the same law firm prepared two answers. It included a statute of limitations defense for two defendants. It didn't for one. We don't know why. Maybe it was a mistake. But certainly as the case now stands, the district judge, having seen some quite significant misconduct, why Mr. Tanaka could say, and I think would be well within his authority under the rules to say, as a sanction for your misconduct and basically lying to me in your personal jurisdiction motion, I'm not going to allow you to defend. It's in my discretion and I'm not going to do it. Do you think it would be within proper discretion to preclude amending to allow an appropriate legal defense because he made misrepresentations on an entirely different legal defense? I think there were all kinds of preclusions, certainly for discovery sanctions. District judges all the time enter orders precluding parties from raising from litigation. Those are usually related to the issues or claims that they're based on, but this is an entirely different defense than the personal jurisdiction defense. Well, in my experience, Your Honor, they're not always related to the underlying claims. Sometimes they're quite broad and sometimes they have the effect of precluding the entire defense or the entire claim depending on which side you're on. I think the district court has wide discretion here, and Mr. Tanaka, frankly, it's hard to think of what the other sanction would be. Mr. Tanaka is not here. If he's no longer before the case because the case is going to be dismissed, it's not clear that the district court would have something. It certainly seems to me it would be well within his discretion, and this is a case where he should be entitled to exercise that discretion given the fact that there was this knowing misrepresentation on the very personal jurisdiction issue. Okay. We're getting close to using up all your time. Will you spare two minutes of rebuttal? Thank you. Thank you, Your Honor. May it please the Court, my name is Andrew George. I represent the FLEs, Obayashi Seigu, Naoto Hirota, and Saki Tanaka. There's just a couple of items from the record that I'd like to correct at the outset. First of all, it was alleged by LG Display just now that we didn't say anything, excuse me, we didn't say that the agreement between the parties with regard to Hitachi precludes them raising the Hitachi claim now. We've said that several times. We said it to the district court in our motion for summary judgment and our reply brief, and we said it to this court in our forum nonconvenience section of our brief. So that is in the record. Also, LG Display just claimed that the very affidavit that led to the district court's personal jurisdiction decision was Mr. Tanaka's affidavit. The district court didn't cite Mr. Tanaka's affidavit at all in ruling on personal jurisdiction. It certainly didn't rely on anything Mr. Tanaka had said. And I would respectfully disagree with it seems to be taken as a given that Mr. Tanaka made all of these misrepresentations. There's only one party in this case that's actually been found to ever make a misrepresentation to the district court, and it was LG Display in footnote 6 of the district court's opinion where it made an allegation regarding claims against Apple that was unsupported by the record. That is actually in the record. Beyond that, LG Display is still continuing to make a misrepresentation about the status of the party's settlement agreement, claiming that it existed, that it was lulled into dropping its tort claims by a settlement agreement that it told the district court at the time didn't yet exist. So that's just not possible, Your Honor. The one other thing I would mention is that there were no tort claims in LG Display's first U.S. lawsuit. So the idea that LG Display was lulled into dropping claims when it dropped its U.S. lawsuit is not possible. There were no claims to begin with. Mr. Pincus writes that the district court footnote articulation of, well, the same statute of limitations defense would apply to Tanaka is incorrect when Tanaka did not, in his answer, include a statute of limitations defense. It's true that Mr. Tanaka did not include a statute of limitations defense. I don't know whether or not the district court was taking into account that fact when it made that determination. This was a motion for reconsideration, Your Honor, and motions for reconsideration give a district court a pretty wide berth in terms of how it's going to handle them. We've set forth what we believe is a ground for upholding what the district court found under prudential mootness, which is to say that what LG Display was asking for was pointless because, ultimately, at the end of the day, as the court noted in its question before, Mr. Tanaka could have simply amended his answer. He could only with leave of court. He doesn't have a right to amend. He has to get permission from the court. And what we don't have is evidence in this record regarding the district court's knowledge that it wasn't in the pleading or predilections with regard to whether he would exercise his discretion to allow such an amendment. And so that's my problem. Sure. Aren't I jumping ahead of the district court if I were to affirm that? I understand the point, and if that's not something that convinces this court, then it should turn to the harmless error question in terms of the question of whether or not it would have made any difference if the district court hadn't assumed, as that position would assume, that Mr. Tanaka had actually alleged a defense of statute of limitations. And on the harmless error question, this would have been pretty easy. LG Display filed four briefs with the district court. No, no. I'm sorry. I don't think I understand your harmless error, to be on point. Okay. I don't even understand what you're saying, because I'm saying suppose that the district court didn't reach the issue of whether or not it would exercise its discretion to allow a motion to amend. And suppose that when it does reach it, it says, no, you people have dragged me through the mud on this. You've lied, and I'm not going to allow it. No, I'm not saying that's what happened. I'm saying suppose the district court reaches that conclusion. I'm not going to let you amend at this point. Sure. Well, then Mr. Tanaka is entirely without the statute of limitations defense. So I don't see how it can be harmless error, because that's the only basis on which this case regarding the 5 million was resolved. The reason it can be harmless error, Your Honor, is because before the district court even gets to that place, it first has to bring Mr. Tanaka back into the case. He had been dismissed from the case long before summary judgment even came up. He was dismissed for lack of jurisdiction, and LG Display raised what is honestly a frivolous argument for bringing him back into the case, claiming that he is a patentee of the Patents and Suits. Now, they've raised conspiracy and agency allegations here in this court, but they never raised them below. They actually affirmatively forfeited agency below. But on the patentee issue, LG Display argued without acknowledging that there's a statutory definition of the term patentee. And it means that you're the legal title holder of the patents. Now, they're also, in their reply brief in this court, the first time they acknowledge that definition exists, they are now raising an all-substantial rights argument and arguing that Mr. Tanaka had all-substantial rights to the Patents and Suits. I'm sure this court is very familiar with the term all-substantial rights. All-substantial rights also has a legal definition, and it's actually in every case that LG What conspiracy, it was raised below under the D.C. Long Arm discussion. What about that? Why can't he be brought in as under the doctrine of respondent superior, under the conspiracy idea? It was, that part was raised below, and there are regional circuit cases that allow for the extension of personal jurisdiction to the mastermind behind that. So, it's a little bit complicated, but let me be clear. It actually wasn't raised below. What happened was, when we moved to dismiss Tanaka at the very beginning of this case, at that point, LG Display opposed the motion and raised the conspiracy allegation, and the district court rejected that. Then, LG Display attempted to bring Mr. Tanaka back into the case, and it didn't raise conspiracy at that point, and that's the motion that is the subject of this appeal, not the original dismissal of Mr. Tanaka. What it's arguing is that it is new facts that give rise to jurisdiction. It argued to the district court that those new facts give rise to patentee jurisdiction. It didn't argue conspiracy, and it affirmatively didn't argue agency, but even so, there would still be the question of, well, where did it plead, excuse me, where did it plead conspiracy? It didn't plead it in any of, in either its original complaint or in its proposed amended complaint. It made no effort to raise this issue with regard to these new alleged facts about Mr. Tanaka, and that's just not appropriate, Your Honor. It's not right to ask the district court to overturn its, excuse me, to ask this court to overturn the district court on an argument that was never made to the district court. So, if there aren't any other questions about Mr. Tanaka, the last point I'll make is that everything in this case, including the choice of law clause, is Asian. There's a choice of law clause that's binding in this case, that's in the settlement agreement that this whole case revolves around. And LG Display enforced that settlement agreement in Korea, came here and enforced it here too, and as the court noted, the settlement agreement called for the Hitachi license to remain with appellees. Now, LG Display is trying to get that too, having enforced the settlement agreement. If it's going to go back on what it enforced, then it should have to do it in the court  Thank you, Your Honor. Thank you. Just a few quick points. I think my friend's argument that the district court didn't cite the affidavit is quite remarkable. The affidavit was obviously introduced as part of the motion. If the affidavit had been truthful and revealed Mr. Tanaka's involvement, we would have immediately had an opportunity to seek the discovery on these issues and to raise the issues that we're raising now. So obviously, Mr. Tanaka's false statements were critical here. Second of all, that no one has found these statements to be misrepresentations. The two decisions of the Tokyo courts that we've submitted in the record have found all of these relevant facts that basically that Mr. Hirota was a straw person and this was technology stolen from LG. With respect to the question of whether we raised these arguments below, I would refer to the court A1020-21, which is the motion for reconsideration, which talks about these very arguments about alter ego, veil piercing, and applies them in this context and refers to conspiracy and agency. It's all getting at the same thing, which is when you have individuals who are in the same position as companies that are alter egos, they should be treated as one and the same. Finally, I just want to give the court to ask any questions. We raised this question of the sealing of the notice of interested parties, which the motions panel referred to this court, and I don't know if the court has any questions about that question. Thank you. Thank you. We thank both counsel and the case is submitted.